UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case 24-CR-641-JHR

United States of America
        Plaintiff

v.

Edwin Pagan III
        Defendant

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Edwin Pagan III, stands before the Court convicted of misprision of felony, arising from conduct that occurred after John Costanzo Jr. and Manuel Recio were indicted. Mr. Pagan's offense was serious and wrong, and he accepts responsibility for it. But it was not bribery, not conspiracy, not obstruction, and it was not motivated by personal gain. It consisted of failing to report what he knew and testifying for others in a misguided attempt at loyalty—conduct that did not impede the investigation or prevent prosecution; the defendants were tried and convicted.

The advisory Sentencing Guidelines yield a range of 10 to 16 months' imprisonment. (Presentence Investigation Report (PSR), ECF No. 86 ¶ 108). Mr. Pagan does not object to that calculation. But as Probation itself recognizes, a sentence within that range would be greater than necessary. (*Id*. at 27-29). When the Court considers the full record—Mr. Pagan's history, the aberrational nature of the offense, the severe collateral consequences already imposed, the outcomes of other defendants in this case, and the consistent voice of more than fifty letters submitted on his behalf—a sentence of probation, or at most home confinement, is sufficient but not greater than necessary to satisfy 18 U.S.C. § 3553(a).

## I. OFFENSE CONDUCT

The offense conduct is narrow and temporally limited. Per Mr. Pagan's allocution, his knowledge that a federal felony had been committed came from the Indictment of Mr. Costanzo and Mr. Recio. Mr. Pagan's conduct occurred entirely after they were charged. Rather than reporting additional information to authorities. Mr. Pagan testified for the defense at trial, the affirmative act towards concealment.

That conduct constituted misprision, and Mr. Pagan has admitted it. But it did not obstruct the investigation, delay the prosecution, or prevent accountability. Mr. Costanzo and Mr. Recio were tried and convicted. Mr. Pagan's offense was a failure of judgment, not an attempt to derail justice.

## II. ACCEPTED ADVISORY GUIDELINES

Probation correctly calculates the advisory Sentencing Guidelines at Offense Level 12, Criminal History Category I, yielding a range of 10 to 16 months' imprisonment. (PSR, ECF No. 86 ¶ 108). Mr. Pagan does not challenge the calculation.

At the same time, the Guidelines necessarily import aggravating factors from the underlying bribery offense that overstate Mr. Pagan's culpability for purposes of sentencing. That is why Congress and the Sentencing Commission preserved the Court's discretion under § 3553(a), particularly in misprision cases where the offense criminalizes concealment rather than participation.

### A. Financial Clarification

The PSR states that the payments attributed to Mr. Pagan "exceeded [his] entire available net income in 2019 by more than $8,000." (PSR, ECF No. 86 ¶ 34). That statement is inaccurate and rests on an incomplete financial premise.

Mr. Pagan had substantial savings—totaling hundreds of thousands of dollars—held in personal accounts. The $50,000 payment referenced in the PSR was drawn from those existing and

traceable funds. It was not funded by contemporaneous income, undisclosed sources, or illicit proceeds. Probation is already in possession of Mr. Pagan's tax returns and financial records reflecting those assets. The Court should therefore rely on the underlying tax and account records, not the PSR's income-only comparison, in assessing Mr. Pagan's financial circumstances. The financial records confirm that these payments were drawn from Mr. Pagan's own lawful assets and do not reflect hidden income, unexplained wealth, or proceeds of criminal activity.

### III.     HISTORY AND CHARACTERISTICS (§ 3553(a)(1))

The Court has received fifty-three letters from individuals who have known Mr. Pagan in different capacities and at different stages of his life: law enforcement officers, attorneys, supervisors, family members, faith leaders, and community members. These letters were written independently, without coordination, and from widely different perspectives. Yet they speak with a single, consistent voice.

Across decades of service, Mr. Pagan is described as reliable, principled, and deeply trusted. Letter writers repeatedly describe trusting him with their safety, their careers, and critical decisions made under pressure. Many emphasize his quiet commitment to mentoring, training, and protecting others—often without compensation or recognition.

Equally striking is how uniformly the letters describe the offense conduct: as aberrational. Individuals who worked alongside Mr. Pagan for years—and in some cases decades—describe the conduct before the Court as wholly inconsistent with the person they know. This assessment comes not from family alone, but from experienced law enforcement and attorneys who understand the gravity of the offense and do not minimize it.

The letters also reflect acceptance and accountability. There is no excuse-making. Mr. Pagan understands that he let people down, and the writers do not suggest otherwise.

## IV.    COLLATERAL CONSEQUENCES AND RETIREMENT (§ 3553(a)(2))

Late last year, Mr. Pagan retired from the Coral Gables Police Department, ending a nearly thirty-year law enforcement career. Whatever sentence the Court imposes, he will never again serve as a police officer or hold a position of public authority.

The consequences of this conviction extend well beyond the loss of his career. As a convicted felon, Mr. Pagan has lost the legal ability to possess a firearm, a restriction that has immediate and lasting effects on his livelihood. A substantial portion of his income was derived from armed security work and firearms training—work he is now permanently barred from performing. In addition, a significant portion of his income came from investigative work, but this conviction will result in the loss of his investigator's license, foreclosing that line of lawful employment as well.

For someone whose professional life centered on public safety, training, and lawful use of firearms, these prohibitions are not incidental. They foreclose entire lines of work for which Mr. Pagan is uniquely trained and experienced. In sum, they impose a significant, permanent economic penalty by operation of law.

These collateral consequences already serve the core purposes of sentencing. They deter future misconduct, protect the public, and promote respect for the law. There is no risk of recidivism and no need for incapacitation. Additional incarceration would add little beyond what Mr. Pagan has already lost.

## V.    AVOIDING UNWARRANTED DISPARITIES (§ 3553(a)(6))

This case presents a stark disparity issue. David Macey—whose conduct was more direct and who faced substantive corruption charges—was permitted to resolve his case through a deferred prosecution agreement. That resolution involved no conviction, no incarceration, and the government terminated diversion early, after approximately three months. As a result, Mr. Macey retained his law

license, and his legal practice continued uninterrupted. He suffered neither incarceration nor the professional disqualification that accompanies a felony conviction.

By contrast, Mr. Pagan stands before the Court convicted of misprision of felony, a substantially less serious offense. He has lost his law enforcement career, his ability to possess a firearm, and significant lawful avenues of employment. He nevertheless faces a custodial guideline range. On one end of the spectrum is Mr. Macey. On the opposite end are Mr. Costanzo and Mr. Recio, who went to trial, were convicted, and received prison sentences. Mr. Pagan's conduct falls squarely between these outcomes. Imposing incarceration on Mr. Pagan would invert relative culpability with Mr. Macey, subjecting a less culpable participant to harsher consequences. That result would create precisely the kind of unwarranted sentencing disparity § 3553(a)(6) is designed to prevent.

## VI. EMPIRICAL SENTENCING DATA

The PSR's own Judiciary Sentencing Information Network (JSIN) data confirms that incarceration is not the norm for similarly situated defendants. (PSR, ECF No. 86 at 24-25). For defendants sentenced under U.S.S.G. § 2X4.1, at Offense Level 12 and Criminal History Category I, the median sentence is zero months, the average sentence is six months, and only half received any term of imprisonment. Here, those data points strongly support a noncustodial sentence.

Section 2X4.1 applies to both misprision and accessory-after-the-fact offenses, but the comparison group is overwhelmingly composed of misprision cases. Notably, the noncustodial sentences reflected in the JSIN data were imposed on defendants who cooperated with the government, yielding a median sentence of zero months. In the § 2X4.1 universe, cooperation often reflects closer proximity to the underlying offense conduct. The fact that cooperating defendants nevertheless avoided incarceration underscores that custody is not the default outcome under § 2X4.1,

particularly for defendants like Mr. Pagan whose conduct—post-indictment testimony without personal gain—falls at the low end of culpability contemplated by the guideline.

The empirical backdrop reinforces that incarceration is not necessary in every misprision case, particularly where the defendant did not participate in the underlying scheme, derived no personal benefit, and has already suffered severe collateral consequences.

## VII.    CONCLUSION

Mr. Pagan's conduct warrants punishment. He does not ask the Court to excuse it. But the purposes of sentencing do not require incarceration for a defendant convicted of post-indictment misprision, with no personal gain, no obstruction impact, no criminal history, a lifetime of service, and a career that has now ended. A sentence of probation, or at most home confinement, would be sufficient but not greater than necessary to satisfy § 3553(a).

Respectfully submitted,

/s/ Christopher M. DeCoste
FL Bar: 15969
Law Office of Christopher DeCoste, P.A.
40 NW 3rd St PH 1, Miami, FL 33128
cmd@christopherdecoste.com
305-395-5775

**CERTIFICATE OF SERVICE**

      I certify that the foregoing was filed through CM/ECF on January 20, 2026 and served on all appropriate parties through that system.

                                        /s/ Christopher M. DeCoste
                                        Law Office of Christopher DeCoste, P.A.